## UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| GOFIT LLC, an Oklahoma Limited<br>Liability Company, | ) | |
| | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 12-CV-622-JED-FHM |
| | ) | |
| GOFIT LLC, a Delaware Limited<br>Liability Company, and<br>LUPINE DREAMS LLC | ) | |
| | ) | |
| | ) | |
| | ) | |
| Defendants. | ) | |

### OPINION AND ORDER

The Court has for its consideration the "Motion to Dismiss and Brief in Support of Defendants GoFit, LLC and Lupine Dreams, LLC" (Doc. 12) (the "Motion"). Defendants argue that this case should be dismissed because the Court lacks personal jurisdiction over them.

### I.      Background

Plaintiff, GOFIT LLC, is an Oklahoma limited liability company doing business in Tulsa, Oklahoma. Plaintiff is a nationwide seller of fitness-related equipment. Defendants, GoFit LLC and Lupine Dreams LLC (collectively, "defendants"), are both Delaware limited liability companies.[1] Plaintiff's claims in this case are based upon use of the name GoFit – the designation under which defendants are offering their services, which consist of gym passes that can be used on a nationwide basis. Plaintiff asserts that use of the GoFit mark and corresponding

---

[1] Plaintiff appears to plead claims against Lupine Dreams LLC on the basis of alter ego liability only. (*See* Doc. 2, at 1-2). This conclusion is drawn from the assertion that Lupine Dreams LLC is a subsidiary of GoFit LLC (Delaware). Plaintiff bases this allegation on the fact that the same address is listed for both companies in their incorporation materials. (*See id.*). Defendants dispute that the entities should be treated as one. (Doc. 24, at 4). For purposes of this jurisdictional analysis only, the Court will evaluate all evidence as though it relates to both companies equally.

design elements on defendants' website, www.gofitpass.com, constitutes a violation of plaintiff's trademark rights.   Plaintiff has thus asserted claims against defendants for federal trademark infringement, false designation of origin in violation of 15 U.S.C. § 1125(a), common law unfair competition and trademark infringement, violation of the Oklahoma Unfair Trade Practices Act (78 *Okla. Stat*. § 51 *et seq*.), infringement to "enhance the commercial value of defendants' products," contributory trademark infringement, vicarious trademark infringement, and violation of the Federal Anticybersquatting Consumer Protection Act (15 U.S.C. § 1125(d)).

Defendants' Motion challenges this Court's jurisdiction, arguing that defendants' have no contacts with Oklahoma sufficient to subject them to personal jurisdiction in this forum.   To that end, defendants have submitted the declaration of Gerald Levine (Doc. 12-1) which states, among other things, that defendants have no members or manager in Oklahoma, no contracts with any person or company doing business in Oklahoma, and have not done business with anyone in the state.   Mr. Levine further attests that defendants have no "offices, mailing addresses, bank accounts, telephone listings, agents, employees, or personnel within the State of Oklahoma." (*Id*.).   Finally, Mr. Levine swears that no sales or commercial transactions have been conducted in relation to the GoFit mark, let alone in Oklahoma.  (*Id*.).   The sole contact with Oklahoma which plaintiff argues provides the Court with jurisdiction is defendants' website.   Accordingly, the Court's analysis of whether it has jurisdiction involves defendants' website and whether it is a sufficient contact with Oklahoma for purposes of establishing personal jurisdiction.

## II.     Standards

Plaintiff bears the burden of establishing that the Court has personal jurisdiction over the defendants.  *OMI Holdings, Inc. v. Royal Ins. Co. of Canada*, 149 F.3d 1086, 1091 (10th Cir.

1998).  "When a district court rules on a Fed. R. Civ. P. 12(b)(2) motion to dismiss for lack of personal jurisdiction without holding an evidentiary hearing, ... the plaintiff need only make a prima facie showing of personal jurisdiction to defeat the motion." *Id.* (citations omitted).  "The plaintiff may make this prima facie showing by demonstrating, via affidavit or other written materials, facts that if true would support jurisdiction over the defendant." *Id.* at 1091.  "In order to defeat a plaintiff's prima facie showing of jurisdiction, a defendant must present a compelling case demonstrating 'that the presence of some other considerations would render jurisdiction unreasonable.'" *Id.* (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 477 (1985)).  The allegations of the complaint must be accepted as true to the extent they are uncontroverted by a defendant's affidavit.  *Taylor v. Phelan*, 912 F.2d 429, 431 (10th Cir. 1990).  If the parties provide conflicting affidavits, all factual disputes must be resolved in plaintiff's favor and a prima facie showing of personal jurisdiction is sufficient to overcome defendant's objection.  *Id.*

For a court to exercise personal jurisdiction over a nonresident defendant, the plaintiff must demonstrate the existence of every fact required to satisfy both the forum's long-arm statute and the Due Process Clause of the United States Constitution.  *See* 12 *Okla. Stat.* § 2004(F).  "Because Oklahoma's long-arm statute permits the exercise of jurisdiction that is consistent with the United States Constitution, the personal jurisdiction inquiry under Oklahoma law collapses into the single due process inquiry." *Intercon, Inc. v. Bell Atl. Internet Solutions, Inc*., 205 F.3d 1244, 1247 (10th Cir. 2000) (citing *Rambo v. Am. S. Ins. Co*., 839 F.2d 1415, 1416 (10th Cir. 1988)); *see also Hough v. Leonard*, 867 P.2d 438, 442 (Okla. 1993).

"Due process requires that the nonresident defendant's conduct and connection with the forum state are such that the nonresident could reasonably anticipate being haled into court in that state." *Conoco, Inc. v. Agrico Chem. Co*., 115 P.3d 829, 835 (Okla. 2004) (citing *World–*

3

*Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980)).   "The Due Process Clause

permits the exercise of personal jurisdiction over a nonresident defendant 'so long as there exist

minimum contacts between the defendant and the forum State.'"   *Intercon*, 205 F.3d at 1247

(quoting *World–Wide Volkswagen*, 444 U.S. at 291).   A court "may, consistent with due process,

assert specific jurisdiction over a nonresident defendant 'if the defendant has purposefully

directed his activities at the residents of the forum, and the litigation results from alleged injuries

that arise out of or relate to those activities.'"   *Id*. at 1247 (quoting *Burger King*, 471 U.S. at 472

(1985)).   "When a plaintiff's cause of action does not arise directly from a defendant's forum

related activities, the court may nonetheless maintain general personal jurisdiction over the

defendant based on the defendant's business contacts with the forum state."   *Id*. at 1247 (citing

*Helicopteros Nacionales de Colombia v. Hall*, 466 U.S. 408, 414–16 & n.9 (1984)).

### III.   <u>Analysis</u>

As noted, plaintiff argues that defendants' website, www.gofitpass.com, constitutes

purposefully directed commercial activity directed towards Oklahoma as a result of its alleged

level of interactivity.   In support of this proposition, plaintiff principally relies upon *Zippo*

*Manufacturing Co. v. Zippo Dot Com, Inc.*, 952 F. Supp. 1119 (W.D. Penn. 1997) and its

progeny.[2]

In *Zippo*, the court discussed the various levels of interactivity available among websites

and utilized a website's interactivity as a sliding scale for whether it constitutes a "contact" with

the forum state significant enough to create personal jurisdiction:

> At one end of the spectrum are situations where a defendant clearly does business
> over the Internet. If the defendant enters into contracts with residents of a foreign

---

[2]   *Zippo* is considered to be a seminal case in the area of evaluating whether a website can be sufficient to establish personal jurisdiction.   *See, e.g., Outdoor Channel, Inc. v. Performance One Media, LLC*, 826 F. Supp. 2d 1271, 1284 (N.D. Okla. 2011) (discussing *Zippo* at length).

> jurisdiction that involve the knowing and repeated transmission of computer files
> over the Internet, personal jurisdiction is proper. At the opposite end are situations
> where a defendant has simply posted information on an Internet Web site which is
> accessible to users in foreign jurisdictions. A passive Web site that does little
> more than make information available to those who are interested in it is not
> grounds for the exercise personal [sic] jurisdiction. The middle ground is
> occupied by interactive Web sites where a user can exchange information with the
> host computer. In these cases, the exercise of jurisdiction is determined by
> examining the level of interactivity and commercial nature of the exchange of
> information that occurs on the Web site.

952 F. Supp. at 1124.  The Tenth Circuit has not expressly adopted the *Zippo* sliding-scale test for internet jurisdictional analysis.  *See Shrader v. Biddinger*, 633 F.3d 1235, 1242 n.5 (10th Cir. 2011).  In *Shrader*, the court noted that the personal jurisdiction analysis in internet contexts must be adapted "by placing an emphasis on the internet user or site *intentionally directing* his/her/its activity or operation at the forum state rather than just having the activity or operation accessible there."  *Id*. at 1241 (emphasis original).  The *Shrader* court utilized the following test for specific jurisdiction in an internet context:

> [A] State may, consistent with due process, exercise judicial power over a person
> outside of the State when that person (1) *directs electronic activity into the State,*
> (2) *with the manifested intent of engaging in business or other interactions within
> the State,* and (3) that activity creates, in a person within the State, a potential
> cause of action cognizable in the State's courts. Under this standard, a person who
> simply places information on the Internet does not subject himself to jurisdiction
> in each State into which the electronic signal is transmitted and received. Such
> passive Internet activity does not generally include directing electronic activity
> into the State with the manifested intent of engaging business or other interactions
> in the State thus creating in a person within the State a potential cause of action
> cognizable in courts located in the State.

*Id*. at 1240-41 (emphasis original).  In short, simply having a website viewable over the internet, without more, does not support personal jurisdiction in any state where the website may be viewable.  The court also noted that "it bears emphasizing that general jurisdiction over a web site that has no intrinsic connection with a forum state requires commercial activity carried on with forum residents in such a sustained manner that it is tantamount to actual physical presence

5

within the state." *Id*. at 1246.  The *Shrader* court offered further direction with respect to what "more" could suffice for jurisdiction where the plaintiff's claims are related to a website.  Using an amalgam of internet-related case law and the "effects test" derived from *Calder v. Jones*, 465 U.S. 783 (1984)[3], the *Shrader* court directs us to "look to indications that a defendant deliberately directed its message at an audience in the forum state and intended harm to the plaintiff occurring primarily or particularly in the forum state."  *Shrader*, 633 F.3d at 1241.

**General Jurisdiction**

Defendants' sole contact with Oklahoma – a website viewable within the state – is clearly insufficient to establish general jurisdiction.  It is undisputed that defendants have not sold a single product to an Oklahoma resident or otherwise had any contact with the State beyond the fact that their website is visible here.  The Court need not go beyond that statement in finding a lack of systematic and continuous contacts necessary to support general jurisdiction over defendants.  *See Shrader*, 633 F.3d at 1246.

**Specific Jurisdiction**

Plaintiff alleges that defendants' website is rife with trademark infringing images, which go directly to the heart of plaintiff's trademark infringement claims.[4]  Consequently, plaintiff

---

[3]  Under the *Calder* "effects test," "purposeful direction is established if three showings are made: the defendant (a) commits 'an intentional action'; (b) that is 'expressly aimed at the forum state'; (c) with 'knowledge that the brunt of the injury would be felt in the forum state.'" *Grynberg v. Ivanhoe Energy, Inc*., 490 F. App'x 86, 96 (10th Cir. 2012) *cert. denied*, 133 S. Ct. 941, 184 L. Ed. 2d 726 (U.S. 2013) (quoting *Dudnikov v. Chalk & Vermilion Fine Arts, Inc.*, 514 F.3d 1063, 1072 (10th Cir. 2008)).  Plaintiff urges that this test should be applied in addition to the *Zippo* test (*see* Doc. 22, at 10-12).  The Court finds that it need not perform a separate analysis under *Calder*, as the "effects test" is sufficiently captured in performing the analysis counseled by *Shrader*.

[4]  The defendants state that the website has been taken down during the pendency of this litigation.  (Doc. 24, at 2-3).

argues that defendants are using plaintiff's trademarks to generate traffic to their website and therefore are directing activity into Oklahoma which causes harm to an Oklahoma resident. (Doc. 22, at 12-13).  Defendants counter that, whether applying *Zippo* or *Shrader*, their website does not constitute commercial activity directed at Oklahoma sufficient to support personal jurisdiction.

According to defendants, the actual website at issue was, at the time this litigation was filed, significantly different from the website described by plaintiff.  Defendants point out that the webpages described by plaintiff were merely exhibits submitted to the United States Patent and Trademark Office ("USPTO") in connection with defendants' trademark application and were "not actual webpages from a usable form of the website."  (Doc. 24, at 3).  Plaintiff has not submitted any evidence demonstrating that the webpages depicted in its response brief were ever functional, and plaintiff acknowledges that those exhibits were sourced from defendants' trademark application submitted to the USPTO.[5]  (Doc. 22, at 6).  In contrast, the declarations of Mr. Levine (Docs. 12-1 and 24-1) on behalf of the defendants attest that the actual website at issue was not interactive and did not allow commercial transactions to take place.  According to defendants, the website did allow those who visited it to request more information.  (Doc. 24, at 3-4).  Thus, on the *Zippo* spectrum, defendants' website is certainly closer to the passive end of the scale, as it was only minimally interactive.  *See Zippo,* 952 F. Supp. at 1124.  There is no evidence that any Oklahoma resident ever requested information through the website.

---

[5]  Defendants state that the initial trademark application submitted in connection with the GoFit mark contained a "scrivener's error," which stated that the mark had already been used in commerce.  (Doc. 24, at 3; *see also* Doc. 24-1).  On November 27, 2012, the USPTO filing was updated to reflect that the mark was filed on an "Intent to Use" basis and to reflect that the website was "a non-interactive website where no sales could occur."  (Doc. 24, at 3).  The Court finds this "error" to be largely inconsequential with respect to this analysis, as evidence submitted by defendants demonstrated that they have not sold any products or services through the website or otherwise in relation to the GoFit mark.  (Doc. 12-1).

Applying *Shrader* to the facts at hand, it is apparent that defendants' website is an insufficient contact for the purpose of subjecting the defendants to the jurisdiction of an Oklahoma court.   Under the first prong, which looks at whether the defendant "directed electronic activity" into Oklahoma, the evidence establishes that there has been no commercial activity with any Oklahoma resident through the website.   *See Shrader*, 633 F.3d at 1240-41. Even assuming the mere visibility of the website in Oklahoma were sufficient to this first prong, the website would fail the second prong of *Shrader*.   The second prong examines whether the electronic activity directed at Oklahoma was done "with the manifested intent of engaging in business or other interactions within the State."  *Id*.  The website itself does not demonstrate an intent to engage in business or other interactions within Oklahoma because it did not – in its actual form – permit Oklahoma residents to enter into a contract with defendants or otherwise purchase goods or services.  Given the absence of any commercial activity taking place through the website, the Court finds that the website fails the second prong of *Shrader*.  Merely placing information on a website does not manifest an intent to direct commercial activity into Oklahoma.  *See id*. at 1241; *see also Outdoor Channel, Inc.*, 826 F. Supp. 2d at 1286-87 (holding website which merely allowed visitors to request information was insufficient under *Shrader* to establish personal jurisdiction).[6]

The Court therefore finds that it cannot exercise personal jurisdiction over defendants, as plaintiff has not made a prima facie showing that defendants have sufficient minimum contacts with the State of Oklahoma such that defendants' due process rights would not be violated were the Court to assume jurisdiction.

---

[6]   Having found that defendants have no contacts with Oklahoma for the purposes of exercising personal jurisdiction, the assumption of jurisdiction under such circumstances would clearly offend "traditional notions of fair play and substantial justice," and further analysis is not required.  *See Int'l Shoe Co. v. State of Wash.*, 326 U.S. 310, 316 (1945).

**IT IS THEREFORE ORDERED** that defendants' motion to dismiss for lack of jurisdiction (Doc. 12) is **granted**.   Plaintiff's motion to reset the scheduling order upon adjudication of defendants' motion to dismiss (Doc. 34) is **moot**.

This case is hereby terminated.

JOHN E. DOWDELL
UNITED STATES DISTRICT JUDGE